**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

The Painting Company,

        Plaintiff,               Case No. 2:07-cv-550

        v.                    Judge James L. Graham

District Council No. 9,      Magistrate Judge
International Union of      Terrence P. Kemp
Painters and Allied
Trades, A.F.L., et al.,

        Defendant.

<u>**OPINION AND ORDER**</u>

    Plaintiff, The Painting Company ("TPC") filed this declaratory judgment action against three unions, District Council No. 9 ("D.C. 9"), District Council No. 15 ("D.C. 15") and District Council No. 711 ("D.C. 711") (collectively, "the Unions"), affiliated with the International Union of Painters and Allied Trades, AFL-CIO ("IUPAT"), and the International Union Painters and Allied Trades Industry Pension Fund (the "Pension Fund"), Painters and Allied Trades Labor Management Cooperation Initiative, Political Action Togetherness Fund, and Finishing Trades Institute (collectively the "Funds").

    TPC contracted to perform painting work in the New York City Metro Area, New Jersey, and Nevada. In three pre-hire agreements it entered into, TPC agreed to pay union wages and benefits for work done in those geographic areas. TPC seeks a declaratory judgment that it is not obligated to pay union wages and benefits under the

pre-hire agreements when it performs work outside the geographic areas covered by the Unions.

This matter is before the court on the Funds' and the Unions' motions to dismiss. The Funds and the Unions argue that the Amended Complaint should be dismissed because the court is without subject matter jurisdiction under either the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. or the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 et seq. to issue the relief requested. The Funds have also filed a motion to transfer venue in which they argue that this action should be transferred to the District of Columbia, where the Funds filed a collection action against TPC.


## I. STATEMENT OF FACTS

### A. Formation of Pre-Hire Agreements

TPC did work for three retail stores located in New York, Nevada, and New Jersey. At the retail stores' request, TPC agreed to use employees represented by the local unions to perform the painting work on those stores. TPC agreed to do so because it had no employees in those areas to perform the work. TPC understood that the unions required employers to execute standard form independent trade agreements, otherwise known as pre-hire agreements (hereinafter "Agreements"). The Agreements with the Unions obligated TPC to make contributions towards certain benefit funds for work performed by TPC.

According to TPC, two out of the three Union defendants, D.C. 9 and D.C. 15, made representations to TPC that the Agreements

2

obligated TPC to pay union wages and benefits only for work done by TPC employees within the geographic area covered by D.C. 9 and D.C. 15 (the New York Metro Area and Nevada). TPC also alleges that D.C. 9 and D.C. 15 understood that TPC was a non-union employer and that its Agreements with them would not alter TPC's non-union status outside the New York Metro Area and Nevada. According to TPC, TPC entered into the Agreements in reliance upon the representations of D.C. 9 and D.C. 15. TPC also entered into a similar Agreement with D.C. 711 that contained similar language as the Agreements with D.C.9 and D.C. 15, but TPC does not allege that representatives of D.C. 711 made any representations to TPC regarding the meaning of that Agreement.

TPC maintains that the Agreements entered into with the Unions require TPC to contribute to the Funds only for work performed in each Local Union's jurisdiction during the term of each respective Agreement. TPC alleges that it fulfilled these obligations, making the required fund contributions for work performed in the New York Metro Area, Nevada, and New Jersey.[1] TPC interprets these Agreements as not requiring fund payments for work performed in other jurisdictions (like Ohio) in which TPC is not a party to a collective bargaining agreement or pre-hire agreement and where TPC used non-union employees.

The Funds, on the other hand, claim that the when TPC performs work outside the geographic jurisdiction of the Unions, it must

---

[1]Since concluding its work in the New York Metro Area, Nevada, and New Jersey, TPC has performed no work and has employed no bargaining unit employees in those jurisdictions and has not entered into any other collective bargaining or other pre-hire agreement with any union.

comply with the terms of the agreements in effect between the Fund with geographic jurisdiction over the area where the work is located and employers in that area, regardless of whether or not TPC uses members of the Local Unions or any other labor union for such work.

### B.  Language of Agreements

Each Agreement contains an "out-of-area clause" which the Funds allege obligate TPC to, under certain circumstances, make wage and benefit payments for work performed outside the respective jurisdiction.  The relevant clauses in the D.C. 9 and the D.C. 15 Agreements each provide:

> The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to the Agreement, comply with all the lawful clauses of the Collective Bargaining Agreement in effect in said other geographic jurisdiction and executed by the Employers of this industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits and procedure for settlement of grievances set forth therein; provided, however, that as to employees employed by such Employer from within the geographic jurisdiction of the Union Party to this agreement and who are brought into an outside jurisdiction, such employees shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction, whichever are more favorable to such employees, and fringe benefit contributions on behalf of such employees shall be made solely to their home funds in accordance with their governing documents. (Amended Complaint, Ex.  A, at Article VI, § 1.) (Amended Complaint, Ex.  B, at Article 4, § b.)

With respect to the D.C. 711 Agreement, it provides:

> Any employer engaged in work outside the geographical jurisdiction of the union shall:. . .(B) Comply with lawful clauses of the collective bargaining agreement in effect in the other jurisdiction including, but not limited to, wages, hours of work, working conditions, fringe benefits and procedure for settlement of grievances; provided, however,

4

> employees brought into an outside jurisdiction by employers shall be entitled to receive wages, fringe benefits, and conditions effective in either the home or outside jurisdiction, whichever are more favorable to such employees. (Amended Complaint, Ex. C, at Article 1, § 1.7.)

These out-of-area clauses specifically mention the grievance procedure. In addition, two other sections in the Agreements also contain language regarding the arbitration and grievance procedures. First, the Agreements each contain provisions requiring that "all grievances and disputes" which arise "as to the interpretation and application of the Agreement" be resolved through the grievance and arbitration procedures set forth in the Agreement. Amended Complaint, Ex. A., at Article XIII, § 3(a); See also Amended Complaint, Ex. B, at Article 24, § 6(a)(containing similar language); Amended Complaint, Ex. C, at Art. 17, §§ 17.3-17.5 (containing similar language). Second, the Agreements each specifically exclude from arbitration all disputes concerning TPC's liability to make contributions to the Funds. The D.C. 9 Agreement provides:

> If a Signatory Employer fails to make contributions to the Pension Fund within the date required by the National Trustees, or fails to make any other Art. XX Fringe Benefit Contributions when due in a timely manner pursuant to this Trade Agreement, the Union shall have the right to take whatever steps are necessary to secure compliance with this Trade Agreement, notwithstanding any other provisions hereof to the contrary. The Signatory Employer shall be liable for all costs of collection of the payments due together with attorneys' fees and such penalties as may be assessed by the Trustees and/or National Trustees, as set forth in Art. XXII, Sec. 2(a), (b), (c) and (d). The Signatory Employer's liability for payment of Pension Fund contributions under this Trade Agreement shall not be subject to or covered by the grievance or arbitration procedure in Articles XII and XIII, nor to the 'no strike' clause set forth in Art. XIV. (Amended Complaint, Ex. A, at Article XXI, § 2(b)).

5

The D.C. 15 Agreement provides:

> If an Employer fails to make contributions to the Pension Fund within five days after the date required by the trustees, the Joint Committee shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney's fees, and such penalties as may be assessed by the trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure of [sic] any 'no strike' clause which may be provided or set forth elsewhere in this Agreement. (Amended Complaint, Ex. B, at Article 8, § 4).

The D.C. 711 Agreement provides:

> If an Employer fails to make contributions in accordance with the agreement after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees, and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedures or any 'no strike' clause which may be provided or set forth elsewhere in this Agreement. (Amended Complaint, Ex. C, Article 8, § 8.5(B)).

### C. The Pension Fund Claim for Unpaid Pension Funds

On May 30, 2007, following an audit, the Pension Fund, on its own behalf and on behalf of the Funds for which it claims to be the "authorized collection agent," sent TPC a letter stating that TPC owed the Funds a total of $669,631.82 under the Agreements.  It asserted that TPC owed $527,587.35 for past-due contributions to the Funds for work performed in jurisdictions other than D.C. 9's, D.C. 15's, and D.C. 711's and $142,044.47 for liquidated damages,

6

interest, attorney's fees, and audit costs.  The letter set out a ten-day grace period in which TPC was to either pay the delinquent amounts owed or dispute the audit findings. In the letter, the Fund made clear that failure to take either of these actions would leave the Funds with "no alternative but to commence an appropriate collection action in the United States District Court for the District of Columbia." Amended Complaint, Ex.  D.

### D.  TPC's Ohio Declaratory Judgment Action

On June 8, 2007, one day before expiration of the ten-day grace period mentioned in the May 30, 2007 letter, TPC filed this action for declaratory judgment in this court against the Funds and the Unions (the "Ohio Action").

TPC then filed its Amended Complaint on August 15, 2007. The Amended Complaint seeks a declaration that the Agreements do not require the payments to the Fund as alleged in the May 30, 2007, letter and, to the extent they are interpreted otherwise, they are void and/or unenforceable. It also seeks an accounting of the parties' rights and obligations and, to the extent that the Agreements require any additional payments from TPC, an order requiring D.C. 9 and D.C. 15 to make such payments based on their fraudulent conduct.  The Ohio Action has as parties all of the Local Unions involved in the New York, Nevada, and New Jersey Agreements as well as all the Funds involved in this dispute.

### E.  The Pension Fund's D.C. Action

On June 14, 2007, six days after the TPC filed the Ohio Action, the Pension Fund filed a collection action in the United States

District Court for the District of Columbia (the "D.C. Action").[2] The sole claimant in the D.C. Action is the Pension Fund. Neither the Local Unions nor the other Funds were named as parties and the Pension Fund is bringing a pure collection action. On September 27, 2007, TPC moved to dismiss the D.C. Action under the first to file rule, or, in the alternative, to transfer the D.C. Action to this court or stay the D.C. Action pending the resolution of this lawsuit.

On August 5, 2008, the United States District Court for the District of Columbia issued an order denying TPC's Motion to Dismiss and denying TPC's Motion to Transfer.[3]  The D.C. Court held that the Motion to Dismiss should be denied, despite the fact that TPC filed the Ohio Action first, because TPC was engaged in preemptive filing and because TPC would be able to fully try its case in the D.C. Action challenging the Fund's audit.  Moreover, the D.C. Court found the Motion to Transfer should also be denied given the special deference to the plaintiff's choice of forum in a collection action under ERISA. The D.C. Court did grant TPC's Motion to Stay the Proceedings until this court issued a decision determining the contractual obligations between TPC and the Unions.

---

[2] The Pension Fund has since filed an amended complaint in the D.C. Action, adding the Trustee as a party plaintiff and dropping its contract claims and jurisdictional allegations under § 301 of the Labor Management Relations Act.

[3]TPC has filed a Motion to Supplement its Authority with this recent decision of the D.C. Court.  While the Defendants argue over the import of that decision and its relevance to the Ohio Action, they do not object to that decision being considered by this court.  (Doc. #50, p. 1). Therefore, TPC's Motion to Supplement (Doc. #45), is hereby granted.

**F. Relief Requested**

TPC asks this court to declare the Agreements of D.C. 9 and D.C. 15 void and unenforceable because they were fraudulently induced and because D.C. 9 gives the Union unlimited discretion; declare that all the Agreements do not require payments to the Funds sought by defendants, or alternatively, that the provisions are void and unenforceable; declare that TPC cannot be found to have breached the Agreements; provide a full accounting and/or determination as to the parties' rights and responsibilities under ERISA and each respective Agreement; find damages against D.C. 9 and D.C. 15 for amounts of additional payments TPC is required to pay to the Funds; and grant other relief as the court may find appropriate, including costs and attorney's fees. Amended Complaint, ¶¶ A-F.

In response, the Funds filed a motion to dismiss for lack of subject matter jurisdiction as well as a motion to transfer venue to the district court in Washington, D.C. The Unions also filed a separate motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. These motions are presently before this court.

## II. DISCUSSION

### A. Proper Pleading of Claims

#### 1. Indemnification and/or Contribution

Before discussing the parties' various motions, the court will first discuss the structure of TPC's Amended Complaint. It is this court's understanding that TPC intended to plead a claim for indemnification and/or contribution based on the Unions' alleged fraud. However, TPC's claims for indemnification and/or contribution

9

are not clearly laid out in their Amended Complaint. Therefore, this court orders that TPC file a Second Amended Complaint to clarify its claims for indemnification and/or contribution.

### 2.   Fraud

TPC's claims of fraud are also improperly pled. Fed. R. Civ. P. 9(b) requires that averments of fraud be stated with particularity.  "So long as a relator pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." <u>United States ex rel. Snapp, Inc. v. Ford Motor Co.</u>, 532 F.3d 496, 504 (6th Cir. 2008).  Under Fed. R. Civ. P. 9(b), however, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Thus, the element of "knowledge" or whether the Unions acted with a particular purpose may be pled generally.  <u>See</u> <u>generally</u> <u>Ford Motor</u>, 532 F.3d at 505.  Thus, TPC must comply with 9(b)'s special pleadings rules in pleading the remaining elements.

In the Amended Complaint, TPC stated the following with respect to the alleged misrepresentations of D.C. 9:

> To induce Painting Co. to enter into the pre-hire agreement, D.C. 9, through its officers, agents and/or employees, falsely made representations to Painting Co. to the effect that Painting Co. need only be concerned about payment of union wages and benefits for work done by Painting Co. employees within the geographic area covered by D.C. 9 in the New York Metro Area. Moreover, the pre-hire agreement, itself, states that it governs only the New York Metro Area. Painting Co. entered into the pre-hire agreement in reliance upon D.C. 9's representations.

Amended Complaint, ¶¶ 26-27.

In the Amended Complaint, TPC stated the following with respect to the representations of D.C. 15:

> Thus, Painting Co. Vice President, David L. Asman, had a telephone conference with an officer/agent of D.C. 15 and entered into a pre-hire labor agreement with D.C. 15, effective July 1, 2004. (See Trade Agreement with D.C. 15, Exhibit B.) To induce Painting Co. to enter into the pre-hire agreement, D.C. 15, through its officers, agents, and employees, and with intent to cause reliance on the part of Painting Co., which in fact occurred, falsely made representations to Painting Co. to the effect that Painting Co. only needed to be concerned about payment of union wages and benefits for work done by Painting Co. employees within the geographic area served by D.C. 15.

Amended Complaint, ¶29.

Based on the language in its Amended Complaint, TPC has not alleged fraud with sufficient particularity to satisfy Fed. R. Civ. P. 9(b). Based on the Amended Complaint, it is difficult to tell who from D.C. 9 and D.C. 15 made the alleged false representations, to whom they were made, and when those conversations took place. TPC argues that it identified the individuals involved as David Asman, Jeffrey Asman, Anthony Buscema, a D.C. 15 representative handling relations with TPC, and a since deceased D.C. 9 representative, but TPC's Amended Complaint does not state as much. Instead, those individuals are named as the parties negotiating the Agreements, and the Amended Complaint does not state that they are the same individuals who made the alleged misrepresentations or to whom the alleged misrepresentations were made. Such a vague pleading is not sufficient to put the Unions on notice so that they may prepare a responsive pleading. Thus, this court grants the Unions' Motion to Dismiss TPC's claims for fraud

and grants TPC leave to amend its Amended Complaint in order to plead its claim for fraud with more specificity.[4]

## B.  Subject Matter Jurisdiction

### 1.  Standard of Review for Rule 12(b)(1) Motions To Dismiss

This matter is before the court on the motion of defendants to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss.  DXL, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004); Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction.  No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  Ritchie, 15 F.3d at 598.  In matters regarding subject

---

[4]Even assuming these claims can be properly pled, there is still an open question about whether these claims will be subject to arbitration under the Agreements.

matter jurisdiction, the court may look to evidence outside the pleadings. <u>Nichols v. Muskingum College</u>, 318 F.3d 674, 677 (6th Cir. 2003).

A Rule 12(b)(1) motion, when accompanied by evidentiary support, is not converted into a motion for summary judgment, and the court is empowered to resolve factual disputes. <u>Moir</u>, 895 F.2d at 269; <u>Rogers v. Stratton Indus., Inc.</u>, 798 F.2d 913, 915 (6th Cir. 1986). The district court has wide discretion to consider affidavits and documents in resolving disputed jurisdictional facts. <u>Ohio Nat'l Life Ins.</u>, 922 F.2d at 325. "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." <u>Golden v. Gorno Bros., Inc.</u>, 410 F.3d 879, 881 (6th Cir. 2005).

Defendants have filed motions to dismiss the Amended Complaint because they believe this dispute does not contain a federal question under either ERISA or the LMRA.

### 2. Jurisdiction Over the Funds

#### a. *Jurisdiction Over the Funds Under the LMRA*

This court will have subject matter jurisdiction over an action under federal question jurisdiction if the claim arises under federal law. <u>See</u> 28 U.S.C. § 1331.[5] When determining subject matter jurisdiction over a claim seeking declaratory relief, the court will look at the nature of the action threatened by the declaratory

---

[5]"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

defendant to determine whether the claim arises under federal law. "The key issue then in determining whether the federal courts have jurisdiction over a claim for declaratory relief is whether the impending or threatened action would raise a federal question. In other words, the question is whether the federal courts would have subject matter jurisdiction over the threatened claim." Rodriquez v. Tenn. Laborers Health and Welfare Fund, 463 F.3d 473, 476-477 (6th Cir. 2006). Thus, this court will have subject matter jurisdiction to consider TPC's action for declaratory judgment where the Funds' threatened and pending coercive claims arise under federal law.

Here, TPC has asked this court to "declare that the [Agreements] between [TPC] and D.C. 9, D.C. 15, and D.C. 711 are . . . properly interpreted as not requiring the payments to the Funds sought by Defendants . . ." Amended Complaint, ¶ B. In other words, TPC has asked this court to declare that the Fund's allegations that TPC has violated its Agreements with the Unions have no merit. For purposes of subject matter jurisdiction in this declaratory judgment action, this court must determine whether a claim by the Funds for violation of a labor agreement between an employer and a union arises under federal law.

Section 301(a) of the Labor Management Relations Act provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act . . . may be brought in any district court of the United States having jurisdiction of the parties[.]

29 U.S.C. § 185(a).

Here, this court has jurisdiction over this portion of TPC's action against the Funds because the Funds have essentially alleged

a "violation of a contract[] between an employer and a labor organization" under § 301 of the LMRA, namely, the alleged violation of the Agreements made between TPC and the Unions. In Stevens v. Employer-Teamsters Joint Council No. 84 Pension Fund, 979 F.2d 444, 449 (6th Cir. 1992), the court determined that a § 301 claim must satisfy three requirements: "(1) a claim of violation of (2) a contract (3) between an employer and a labor organization." Id. at 456.

Applying the three part Stevens test to the case here, it is clear that this court has jurisdiction under the LMRA over TPC's declaratory judgment action to determine the meaning of the Agreements. First, the Funds allege a violation of the Agreements by alleging in the D.C. Action that TPC did not pay its required contributions. Second, there is a contract, the Agreements between the Unions and TPC. Third and finally, the Agreements are between an employer, TPC, and a labor organization, the Unions.

The Funds argue that because they are not a party to the Agreements, but only third-party beneficiaries, jurisdiction is not appropriate under the LMRA. This argument is not supported by law. The court in Stevens reasoned that "Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action. Jurisdiction exists as long as the suit is for violation of a contract between a union and employer even if neither party is a union or an employer." Id. at 457.

The Funds argue that Stevens was wrongly decided because it did not cite to Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364 (1984) and NLRB v. Amax Coal Co., Div. of Amax, 453 U.S. 322 (1981) as controlling. Neither of those cases is applicable here.

15

_Schneider_ involved union benefit funds' claims against employers for fund contributions under both ERISA and § 301, but subject matter jurisdiction under § 301 was not at issue in the case. _Id._ at 366. The only issue before the Court was whether the funds were required to arbitrate their claims pursuant to the underlying collective bargaining agreement's grievance procedure. _Id._ at 368. _Schneider_ simply held that a fund could seek judicial enforcement of a trust term against an employer without first submitting to arbitration an underlying dispute over the meaning of a term in the collective-bargaining agreement. _Id._ at 376.

The Funds' reliance on _NLRB v. Amax Coal Co., Div. of Amax_, 453 U.S. 322 (1981) is likewise misplaced. The Funds argue that _Amax_ holds that a benefit plan is not a labor organization or an agent of a labor organization.[6] But, as noted in _Stevens_, to bring a claim under the LMRA the parties to the suit do not have to be labor organizations, but simply have to allege a violation of a contract between a labor organization and an employer.

The Funds also argue that under _United Food & Commercial Workers Local 951 v. Mulder_, 31 F.3d 365 (6th Cir. 1994), this court does not have jurisdiction under the LMRA over non-signatories to a labor agreement. _Mulder_, however, was not a declaratory judgment action. _Mulder_ involved a plaintiff union seeking to force non-signatory, non-union employees to abide by

---

[6] The holding in _Amax_ was simply that employer-selected trustees of a § 302(c)(5) trust fund were found not to be "representatives" of the employer "for the purposes of collective bargaining or the adjustment of grievances" within the meaning of § 8(b)(1)(B). _Id._ at 328-338.

provisions of a labor agreement to which they were not a party. Id. at 366.

Here, the Funds in the D.C. Action have asked TPC to abide by the labor agreement, and this Ohio Action seeks a declaration that TPC is not required to do so. Here, it is TPC, a signatory to the labor agreement, who seeks to avoid enforcement of the Agreements against it. This situation is very different from Mulder, where the union was asking the court to force a non-signatory to abide by provisions of an agreement to which it was not a party. In Mulder, the Sixth Circuit specifically relied on the fact that the union was *not* seeking a declaratory judgment when determining that the court did not have jurisdiction. It reasoned, "as the district court observed, the union does not seek a declaratory judgment that its rebate procedure is appropriate, but rather seeks enforcement of a decision against these specific employee-defendants." Id. at 370. This case, unlike Mulder, is not one where a non-signatory to the contract is being required to abide by the terms of an Agreement to which it was not a party.

Because this court would have had jurisdiction under the LMRA over the coercive action by the Funds against TPC, it likewise has jurisdiction to consider TPC's declaratory judgment against the Funds to determine the meaning of the Agreements.

### b. Jurisdiction Over the Funds Under ERISA

Even though this court has subject matter jurisdiction under the LMRA to determine the meaning of the Agreements, that is only one of TPC's claims for relief. Specifically, TPC has also requested that this court "[p]rovide a full accounting and/or

17

determination as to the parties' rights and responsibilities under ERISA and each respective . . . Agreement." Amended Complaint, ¶D. Clearly, this claim for relief falls outside the LMRA, as it does not involve a violation of the Agreements, but rather involves what the Funds would be entitled to collect from TPC under the terms of the ERISA governed pension plan.  Thus, with respect to this claim, the court must examine whether it has jurisdiction under ERISA.

> *1. Jurisdiction Under ERISA For A Declaratory Judgment By An Employer*

In paragraph 12 of its Amended Complaint, TPC alleges federal subject matter jurisdiction based on § 502(e)(2) of ERISA. 29 U.S.C. §§ 1132(e)(2).[7] The ERISA statute specifically enumerates those parties entitled to bring a civil action.  Specifically, 29 U.S.C. § 1132 provides in relevant part:

§ 1132.  Civil enforcement
(a) Persons empowered to bring a civil action. A civil action may be brought--
   (1) by a participant or beneficiary--
      (A) for the relief provided for in subsection (c) of this section, or
      (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
   (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409;
   (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other

---

[7]This court notes that jurisdiction under ERISA is found in § 1132(e)(1), as explained below.  Although clarified in their supplemental briefing, TPC actually cited ERISA's venue provision in their Amended Complaint.

```
appropriate equitable relief (i) to redress such violations
or (ii) to enforce any provisions of this title or the terms
of the plan;
    (4) by the Secretary, or by a participant, or beneficiary
for appropriate relief in the case of a violation of 105(c);
```

```
* * *
```

```
(e) Jurisdiction.
    (1) Except for actions under subsection (a)(1)(B) of this
section, the district courts of the United States shall have
exclusive jurisdiction of civil actions under this title
brought by the Secretary or by a participant, beneficiary,
fiduciary, or any person referred to in section 101(f)(1).
State courts of competent jurisdiction and district courts
of the United States shall have concurrent jurisdiction of
actions under paragraphs (1)(B) and (7) of subsection (a) of
this section.  (Emphasis added).
```

This statutory language lays out those parties who can bring suit under ERISA.  Section 1132(a) governs standing, or those persons empowered to bring a civil action, while § 1132(e)(1) governs subject matter jurisdiction, those actions which the district court has jurisdiction to hear. See Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 951 (6th Cir. 1990)("Only 'participants' and 'beneficiaries', as those terms are defined under ERISA, have standing to pursue claims for benefits under 29 U.S.C. § 1132(a)(1)(B)"); Great Lakes Steel, Div. of Nat'l Steel Corp. v. Deggendorf, 716 F.2d 1101, 1105 (6th Cir. 1983)(holding that § 1132 (e)(1) does not confer jurisdiction over an action brought by an employer and that 29 U.S.C. § 1132(a) confers no standing to an employer); In re Estate of Sheppard, 658 F. Supp. 729, 735 (C.D. Ill. 1987) (noting that the issue of standing under subsection (a) is analytically distinct from the question of jurisdiction under subsection (e)); D & F Corp. v. Board of Trustees of Pattern & Model Makers Ass'n etc., 795 F.

Supp. 825, 833 (E.D. Mich. 1992)(explaining the difference between subsection (a) and (e)). Employers, such as TPC, are not enumerated parties under ERISA under either the standing or subject matter jurisdiction provisions.

TPC argues that, as in the case of jurisdiction under the LMRA, because it has brought a declaratory judgment, this court must look to the nature of the Funds' threatened action and determine whether the Funds could have brought a coercive action under ERISA in this court against TPC. In support of its argument, Plaintiff cites to a number of cases that analyze ERISA declaratory judgment actions and hold that in order to find jurisdiction, the court should look to the coercive plaintiff. In each of these cases, however, the declaratory judgment plaintiff was one of the enumerated parties in §1132(e) empowered to bring an action in the district court under ERISA. Prudential Ins. Co. of Am. v. Doe, 76 F.3d 206 (8th Cir. 1996)(declaratory judgment action brought by insurer which was a plan fiduciary); Transamerica Occidental Life Ins. Co. v. Digregorio, 811 F.2d 1249 (9th Cir. 1987)(declaratory judgment action brought by fiduciary); Rodriguez v. Tenn. Laborers Health and Welfare Fund, 463 F.3d 473 (6th Cir. 2006)(declaratory judgment action brought by plan participant); Reynolds v. Stahr, 758 F. Supp. 1276 (W.D. Wis. 1991) (declaratory judgment action brought by a plan fiduciary); Borg Warner Diversified Transmission Prods. v. UAW, Local No. 287, No. 1:06-cv-058, 2006 U.S. Dist. LEXIS 30101 (S.D. Ind. May 12, 2006) (declaratory judgment brought by employer acting as fiduciary).[8] Thus, in these cases, the court

_____

[8] Plaintiff also cites, U.S. Telecom, Inc. v. Hubert, 678 F. Supp. 1500 (D. Kan. 1987), where the court allowed a declaratory judgment action to be brought by employer under ERISA, but did

was not faced with the question before this court: whether an employer, a non-enumerated party under § 1132(e), can bring an action for declaratory judgment under ERISA if the declaratory judgment defendant could have brought such an action. Under the law of this circuit and the United States, an employer cannot bring such an action.

Great Lakes Steel v. Deggendorf, 716 F.2d 1101 (6th Cir. 1983), like this case, was a declaratory judgment action brought by an employer. The plaintiff in Great Lakes argued it was bringing its declaratory judgment action in its capacity as an employer and also in its capacity as a plan fiduciary. The Sixth Circuit held that plaintiff had no right under ERISA to bring an action as an employer, but agreed that the employer could bring an action as a fiduciary because fiduciaries are among the enumerated parties in § 1132(a)(3) and (e)(1). Id. at 1105. The Sixth Circuit affirmed the district court's decision that held "Section 1132(e)(1) does not confer jurisdiction over an action brought by an employer, and section 1132(a)(3) does not confer standing to an employer to seek the remedies provided by that provision." Id. at 1103. Here, TPC has not argued it has any status other than the status of an employer and thus, consistent with Great Lakes, it cannot bring an action under ERISA.

The holding in Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund, 794 F.2d 221, 228 (6th Cir. 1986) is also instructive. In Whitworth, the Sixth Circuit held that "Congress' failure to specifically mention the term

---

not analyze the statutory structure of § 1132(e) and did not even cite to Franchise Tax, discussed below.

'employer' in section 502 can . . . be construed as meaning that Congress intended to exclude employers from the provisions of that section" and that "Congress intended to limit the parties who could maintain actions pursuant to section 502, that section 502 is an exclusive grant of jurisdiction, and that ERISA does not expressly provide for an action by an employer against a fund for a refund of contributions." Id. at 228. In coming to its decision, the court in Whitworth relied, in part, on the analysis from Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co., 700 F.2d 889 (2d Cir. 1983) which held "1132(e)(1) should be viewed as an exclusive jurisdictional grant." Id. at 892. Thus, only those parties listed in § 1132(e) are empowered to bring an ERISA action in federal court.

Importantly, in Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983)(superseded on other grounds), the Supreme Court made clear that the express grant of federal jurisdiction under ERISA is limited to suits brought by the parties enumerated in § 1132. In Franchise Tax, the plaintiff, the Franchise Tax Board of California (a non-enumerated party under ERISA) brought a declaratory judgment in state court against ERISA-plan trustees. The ERISA-plan trustees sought removal to federal court, arguing a federal question existed because the trustees could have sought an injunction under ERISA against application of the state regulations, and thus the federal court had subject matter jurisdiction over the declaratory judgment action. The court rejected the trustees' argument, explaining:

> Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would

necessarily present a federal question. Section 502(a)(3) of ERISA specifically grants trustees of ERISA-covered plans . . . a cause of action for injunctive relief when their rights and duties under ERISA are at issue, and that action is exclusively governed by federal law. If [the trustees] could have sought an injunction under ERISA against application to it of state regulations that require acts inconsistent with ERISA, does a declaratory judgment suit by the State "arise under" federal law? We think not.

The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties . . . as to whom Congress presumably determined that a right to enter federal court was necessary to further the statutory purposes. It did not go so far as to provide that any suit *against* such parties must also be brought in federal court when they themselves did not choose to sue. . . . Until Congress informs us otherwise, such a suit is not within the original jurisdiction of the United States district courts.

Id. at 20-22 (emphasis in the original; footnotes omitted).

In light of the strong language from the U.S. Supreme Court in Franchise Tax emphasizing the limited scope of ERISA's intention to provide federal courts with subject matter jurisdiction only over cases brought by the parties specifically listed in that section, and in light of the language from the Sixth Circuit that employers cannot bring actions for declaratory judgment under ERISA, this court holds that there is no ERISA subject-matter jurisdiction for purposes of this declaratory judgment brought by the TPC under ERISA's statutory scheme.

### 2. Jurisdiction Under ERISA Common Law

TPC also argues that this court has jurisdiction to hear its ERISA claim under ERISA common law. It relies on only two cases, Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund, 794 F.2d 221 (6th Cir. 1986) and

23

Chicago Steel & Crane, Inc.  v.  Structural Ironworkers Local NO. 1, No. 00 C 1615, 2000 U.S. Dist. LEXIS 6542 (N.D. Ill.  2000). In Whitworth, the court allowed an employer to proceed in federal court against an ERISA pension fund to recover funds wrongly contributed to the fund.  Although the court held there was no jurisdiction over the suit under § 1132(e), it nonetheless found jurisdiction over the restitution action under the federal common law because ERISA *preempted* any state action for restitution in state court. The Sixth Circuit in Whitworth found that ERISA preemption of the state law claim was necessary in order to ensure uniform decisions under federal law.  Id. at 234-236.

In summary, there is no state court action at issue. The plaintiff's action is a federal declaratory judgment action, and plaintiff has articulated no state law that might be preempted in this case, as there was in Whitworth. This court declines to follow the unreported case from the Northern District of Illinois, Chicago Steel, which relied on Whitworth in finding jurisdiction under federal common law over a declaratory judgment action similar to the one in this case.  In Chicago Steel, the court failed to appreciate the difference between an equitable action for restitution, preempted by ERISA, and an action for declaratory judgment, which does not involve the issue of preemption.

In summary, while this court does have jurisdiction under the LMRA over the Funds to determine whether or not TPC violated the Agreements, it does not have jurisdiction over the Funds under ERISA to provide for an accounting or to determine the parties' rights and responsibilities under ERISA.

24

### 3.  Jurisdiction Over the Unions

As with the Funds, the key issue in determining jurisdiction over TPC's declaratory judgment against the Unions is whether the impending or threatened action would raise a federal question. See Rodriquez v. Tenn. Laborers Health and Welfare Fund, 463 F.3d at 477.  Here, as with the Funds, this court must determine whether the Unions, as coercive plaintiffs, could bring an action under the LMRA for violation of contract against TPC. As noted above, § 301(a) of the LMRA vests the district court with jurisdiction over suits for violations of contracts between an employer and a union. 29 U.S.C. § 185(a).  Were the Union to bring a coercive action against TPC, it would involve the Unions' allegations that TPC violated the Agreements by failing to make contributions to the Funds; thus such an action would fall within this court's jurisdiction under the LMRA.  See Stevens v. Employer-Teamsters Joint Council No. 84 Pension Fund, 979 F.2d 444, 456 (6th Cir. 1992).

The Unions argue that this court lacks jurisdiction under the LMRA because the Union has not alleged that TPC violated the Agreements.  Only the Funds, as third-party beneficiaries to the Agreements, made that allegation.  To support their position, the Union cites Textron Lycoming Reciprocating Engine Div. v. United Auto., 523 U.S. 653, 658 (1998), which holds that the LMRA only grants jurisdiction over suits for *violations* of contracts, not suits that contracts are *invalid*.  The Unions argue that because they have not alleged a violation of the Agreements, there is no jurisdiction under the LMRA.

In Textron, unlike here, no one, either individual, union, employer or third-party beneficiary, alleged a violation of the contract. Here, the Funds, third-party beneficiaries to the contract, have alleged such a violation.  Textron did not deal with the issue of whether a third-party beneficiary could allege such a violation. The Union defendants also cite Bedrock Servs. v. IBEW Local Union Nos. 238, 342 & 495, 285 F. Supp. 2d 693, 701 (W.D.N.C. 2003), but Bedrock involved a plaintiff seeking a declaration that a contract was invalid, not a situation where the plaintiff was accused of a real and concrete violation of an agreement.

TPC seeks a declaration that it did not *violate* the Agreements.  Because the Unions could have brought a coercive action against TPC for violation of the Agreements, TPC can bring an action against the Unions for a declaration that it did not violate the Agreements.[9]

### 4. Discretion to Issue a Declaratory Judgment

Having determined that this court has subject matter jurisdiction under the LMRA, it must now decide whether it will choose to exercise its discretion to issue a declaratory judgment.  Under the Declaratory Judgment Act, a court "*may*

---

[9]To the extent TPC has asked this court to declare the Agreements void and unenforceable, this court has supplemental jurisdiction under 28 U.S.C. § 1367 over those claims because they arise out of a common nucleus of operative facts concerning the formation and interpretation of the Agreements. See Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc., 270 F.3d 1018, 1026 (6th Cir. 2001), Blakely v. United States, 276 F.3d 853, 861 (6th Cir. 2002).

declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a)(emphasis added). Federal district courts have considerable discretion in deciding whether or not to issue such a judgment and the court is not obligated to issue one. <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286-288 (1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." <u>Id.</u> at 288.

In light of this discretion, the Funds have urged this court to decline to exercise its discretion to issue a declaratory judgment in this case. The Sixth Circuit has adopted a five-factor test to determine when a district court should exercise jurisdiction over a declaratory judgment action.  These factors are:(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between the federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. <u>AmSouth Bank v. Dale</u>, 386 F.3d 763, 785 (6th Cir. 2004).

> *a. Whether the Judgment Would Settle the Entire Controversy*

The first factor to consider is whether the judgment would settle the controversy. The Funds urge that this case would not

settle the entire controversy because after this court determines the meaning of the Agreements, the collection action pending in the D.C. Court would still have to go forward.  Thus, the Funds argue, this court should dismiss the action or transfer it to the D.C. Court.

While it is true that the D.C. collection action must be settled separate and apart from this case given that this court does not have jurisdiction over TPC's ERISA claims,[10] that factor does not necessarily require dismissal of this case because the contractual liability of TPC under the Agreements is not before the D.C. Court.  The Ohio Action, on the other hand, will settle the entire controversy over liability of TPC to the Funds.[11]

The facts of this case can be analogized to cases in the Sixth Circuit where the court has found that a declaratory action can settle the entire controversy over an insurance company's liability, even though it will not help resolve the underlying state court tort action. See Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 556 (6th Cir. 2008)(holding that a declaratory judgment

---

[10]Of course, this court has expressed no opinion that would prevent the Funds from filing a counterclaim in this Ohio Action.

[11]This court acknowledges the Funds' argument that their ability to collect in an ERISA collection action does not depend on whether TPC was fraudulently induced to enter into the Agreements and that only the "literal terms of written commitments between the plan, the employer and the union" are relevant. See Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co., 133 F.3d 955, (6th Cir. 1998).  However, the "literal terms of the written commitments" remains to be seen and have not been briefed before this court.  This court will not refuse to exercise its discretion based on the Funds' argument at this early state in the case that the "literal terms of the written commitments" require payment by TPC.

would settle the entire controversy where the only issue for the district court was whether the insurance policy covered Flowers as an insured); Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 454 (6th Cir. 2003) ("[W]hile the declaratory judgment would not end the dispute between Cailu and Stewart, it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend the insureds."); Allstate Ins. Co. v. Green, 825 F.2d 1061, 1066 (6th Cir. 1987) ("The grant of declaratory relief in insurance coverage cases undoubtedly settles the controversy over the insurer's liability to provide a defense for and/or indemnify its insured, thus clarifying the legal relations in issue."). In those cases, the court has recognized that a declaratory judgment can be useful in determining liability on an underlying contract.

As the D.C. Court noted in its opinion, before TPC can be held liable to contribute to the Funds, it must have underlying contractual liability as established by the Agreements between TPC and the Unions.

> The underlying contractual obligations are the bases for the defendant's suit in Ohio, and as the defendant correctly notes, the plaintiffs can only collect delinquent contributions under 29 U.S.C. § 1145 if the employer "is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement." 29 U.S.C. 1145. *Therefore, the Ohio court's decision is a necessary prerequisite to determine whether the plaintiffs in this case can collect contributions from the defendant.*

Int'l Painters & Allied Trades Indus. Pension Fund v. Painting Co., No. 07-1070, p. 11 (D.D.C. Aug. 5, 2008)(hereinafter "D.C.

Opinion")(citing Baylor Heating & Air Conditioning, Inc., 702 F.
Supp. 1253, 1262 (E.D. Va. 1988)(holding that the court would "be
bound by the [independent court's] determination on the
[contractual obligations] issue"))(emphasis added).

The D.C. Court specifically held that "because allowing the
District Court for the Southern District of Ohio to discern the
defendant's contractual obligations before this court proceeds
conserves judicial resources, the court stays these proceedings."
D.C. Opinion, at 2.

The only issue for consideration in the D.C. Action is the
Pension Fund's collection action.  Here, the issue involves
whether the language of the Agreements even obligates TPC to pay
the Funds in the first place.  See generally Scottsdale Ins. Co.,
513 F.3d at 556 (holding that where the scope of the insurance
coverage was not before the state court it was not an abuse of
discretion for the district court to exercise its declaratory
judgment jurisdiction).[12] Thus, this action will necessarily
settle the entire controversy in terms of TPC's liability.

> b.  *Whether the Declaratory Judgment Would Serve
>     a Useful Purpose In Clarifying the Legal
>     Relations at Issue*

The second factor, whether the declaratory judgment would
serve a useful purpose in clarifying the legal relations at

---

[12]This court recognizes the Funds' argument that even though
the Union is joined in this action, this action will not settle
the entire controversy because, as the Funds and the Union argue,
TPC's claims against the Unions are arbitrable.  As noted below,
with the possible exception of a claim for indemnification and/or
contribution, this action is not arbitrable.

issue, is characterized by whether the judgment will clarify
duties for the future, rather than the past harm a coercive suit
is aimed at redressing.  AmSouth Bank, 386 F.3d at 786.  The
Funds argue that no useful purpose would be served by this action
because just six days after the Ohio Action was filed, the D.C.
Action was filed.  See id. at 787 (holding that the action
serves no useful purpose when only a short time elapses between
the filing of a declaratory judgment suit and the threatened
action).

　　　In AmSouth, the court held:

> Where a pending coercive action, filed by the natural
> plaintiff, would encompass all the issues in the
> declaratory judgment action, the policy reasons
> underlying the creation of the extraordinary remedy of
> declaratory judgment are not present, and the use of
> that remedy is unjustified[.]

Id. at 787.  Unlike the situation in AmSouth, the pending
coercive action is a collection action which does not raise all
of the contract interpretation issues underlying this action and
does not involve the Unions as parties. A useful purpose is
served in issuing a determination as to the meaning of the
Agreements because it will clarify TPC's liability to the Funds
in the future.

　　　　　　c.　Whether the Declaratory Remedy is Being Used
　　　　　　　　for Procedural Fencing

　　　The fact that TPC filed suit within the period provided in
the Funds' demand for payment and made no effort to settle the
matter beforehand may suggest TPC's intent to act preemptively in
filing this action. See Internet Transaction Solutions, Inc. v.
Intel Corp., No.  06-cv-035, 2006 U.S. Dist. LEXIS 29532, at *19

(S.D. Ohio May 8, 2006).  However, TPC's behavior may have also been motivated in part by its desire to have the action for liability to the Funds decided along with its claims against the Unions for fraud and indemnification and/or contribution.  It is certainly useful for the same court to decide these issues together because they all potentially involve the meaning and interpretation of the contract.  Thus, while this court agrees with the D.C. Court that plaintiff may have been motived in part by a desire to launch a "preemptive strike" against the Funds' collection action, this court also finds that TPC may well have been motivated by the interests of judicial economy and efficiency.

> ### d.  Whether the Action Increases Friction Between State and Federal Court

The fourth factor, whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction, is not at issue here because both this action and the D.C. Action are federal actions.

> ### e.  Whether There Is an Alternative Remedy that is Better or More Effective

While the D.C. Action is an alternative remedy, there is no evidence that it will be better or more effective. The D.C. Court has indicated that it is content to have this court decide the contract language at issue prior to entertaining its ERISA action.  Moreover, as discussed below, there are a number of

32

local concerns involved in this case, and this court, sitting in Ohio, is better suited to resolve those concerns than the D.C. Court.  Thus, the alternative remedy would not be better or more effective.

The Sixth Circuit has recognized that no one factor in this test is more important than the others.  <u>Scottsdale Ins.</u>, 513 F.3d at 563.  In this case, only the third factor even potentially points to declining to exercise jurisdiction.  Thus, this courts opts to exercise its declaratory judgment discretion over the suit brought by TPC.

### C.  Failure to State a Claim

#### 1. Standard of Review Under Rule 12(b)(6) For Failure to State a Claim

The Unions also move this court to dismiss the action on the ground that TPC has failed to state a claim on which relief can be granted because its claims are subject to arbitration under the language of the Agreements. When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  <u>Erickson v. Pardus</u>, 550 U.S. __, 127 S.Ct. 2197, 2200 (2007) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)); <u>Sensations, Inc. v. City of Grand Rapids</u>, 526 F.3d 291, 295 (6th Cir. 2008).  Under Rule 8(a), "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Erickson</u>, 127 S.Ct. at 2200 (quoting <u>Conley v. Gibson</u>,

33

355 U.S. 41, 47 (1957)). Because a motion under Rule 12(b)(6) is directed solely at the complaint itself, the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. Scheuer, 416 U.S. at 236; Bell Atlantic Corp. v. Twombly, 550 U.S. __, 127 S.Ct. 1955, 1965 (2007) (Rule 8 "does not impose a probability requirement at the pleading stage").

Despite this liberal pleading standard, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ("[W]e need not accept as true legal conclusions or unwarranted factual inferences."). Though the complaint need not contain detailed factual allegations, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Bell Atlantic, 127 S.Ct. at 1964-65; Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Bell Atlantic, 127 S.Ct. at 1965 n.3. Labels, conclusions, and formulaic recitations of the elements of a cause of action "will not do." Id. at 1965. "Accordingly, a complaint 'must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Ferron v. Zoomego, Inc., No. 07-4007, 2008 U.S. App.

34

LEXIS, at *5 (6th Cir. May 7, 2008) quoting Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 406 (6th Cir. 1998).

### 2. Arbitration of Disputes Regarding Liability to the Fund

Generally, if a valid arbitration agreement exists, then there is a presumption that specific disputes fall within its scope. AT&T Techs. v. Communications Workers of Am., 475 U.S. 643, 650 (1986). However, this presumption is overcome by an "express provision excluding a particular [dispute] from arbitration." Id. at 649 (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960)); United Mine Workers v. Chris-Craft Corp., 385 F.2d 946, 949-950 (6th Cir. 1960) ("When, as in this case, a subject is specifically excluded from the arbitration procedure, we are not free to ignore the plain wording of the agreement between the parties.") "[A] party cannot be required to arbitrate an issue unless it has contracted to do so." Mail-Well Envelope, Cleveland Division v. Int'l Ass'n of Machinists and Aerospace Workers, District 54, 916 F.2d 344, 346 (6th Cir. 1990). Whether the contract has created such a duty is a question to be decided by the court. AT&T Techs., 475 U.S. at 649.

In United Steelworkers of America v. Warrior & Gulf Navigation Co., the Court stated:

> [T]he judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts

35

should be resolved in favor of coverage. . . . In the
absence of any express provision excluding a particular
grievance from arbitration, we think only the most
forceful evidence of a purpose to exclude the claim
from arbitration can prevail, particularly where, as
here, the exclusion clause is vague and the arbitration
clause quite broad.

363 U.S. 574, 582-84 (1960).

The Unions argue that each of the Agreements specifically
provide for arbitration of "all grievances and disputes" which
arise "as to the interpretation and application" of the
Agreements. Amended Complaint, Ex. A., at Article XIII, § 3(a);
See also Amended Complaint, Ex. B, at Article 24, §
6(a)(containing similar language); Amended Complaint, Ex. C, at
Art. 17, §§ 17.3-17.5 (containing similar language). They argue
that because this dispute concerns the interpretation and
application of the out-of-area clauses in the Agreements, it is
essentially a dispute over contract interpretation and must be
arbitrated. Assuming, without deciding, that a valid arbitration
agreement exists in this case, the Agreements at issue
specifically exclude the underlying disputes from arbitration.

All three Agreements specifically exclude disputes regarding
TPC's liability for fund contributions from the grievance and
arbitration procedure. The pertinent provisions of the Agreements
state:

> If a Signatory Employer fails to make contributions to
> the Pension Fund within the date required by the National
> Trustees . . . the Union shall have the right to take
> whatever steps are necessary to secure compliance . . .
> *The Signatory Employer's liability for payment of Pension*
> *Fund contributions under this Trade Agreement shall not*
> *be subject to or covered by the grievance or arbitration*

*procedure* . . .[13] (Amended Complaint, Ex. A, at  Article XXI, § 2(b))(emphasis added).

The Unions argue that this case is essentially one of contract interpretation and should be arbitrated because this court will have to interpret the Agreements' out-of-area clauses to determine TPC's liability. But the Unions fail to recognize that while this dispute might involve interpretation of the language in the Agreements, this is fundamentally a dispute about TPC's liability to make contributions to the Funds, and the outcome of this case will determine whether or not TPC owes money

---

[13] The D.C. 15 Agreement provides:

If an Employer fails to make contributions to the Pension Fund within five days after the date required by the trustees, the Joint Committee shall have the right to take whatever steps are necessary to secure compliance . . . *The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure of [sic] any 'no strike' clause which may be provided or set forth elsewhere in this Agreement.* (Amended Complaint, Ex. B, at Article 8, § 4)(emphasis added).

The D.C. 711 Agreement provides:

If an Employer fails to make contributions in accordance with the agreement after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement . . . *The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedures or any 'no strike' clause which may be provided or set forth elsewhere in this Agreement.* (Amended Complaint, Ex. C, Article 8, § 8.5(B))(emphasis added).

to the Fund. Thus, this case falls squarely within the exclusionary language.

The Unions also argue that because the out-of-area clauses affect not only pension contributions, but also wages, hours, and other terms of employment, this court's decision should be arbitrated. Although it is true that this court's interpretation of the language of the Agreements may have some tangential affect on TPC's liability in the future for an action regarding these other terms and conditions of employment, the specific exception in the Agreements excluding from arbitration the issue of liability to the Funds still controls.  The fact that other aspects may be affected does not undermine the parties' Agreements to exempt from arbitration disputes regarding the Employer's liability to the Funds.

The Unions argue that <u>Warrior & Gulf</u> dictates a different decision. In <u>Warrior & Gulf</u>, the Court stated that decisions that were a "function of management" were exempted from arbitration. What a "function of management" meant could only be determined by interpreting the contract and deciding what parts of the contract gave management complete control. <u>Warrior & Gulf</u>, 363 U.S. at 584.  Because the meaning of "function of management" required contract interpretation, the matter was one for the arbitrator. <u>Id.</u> at 585. Here, unlike in <u>Warrior & Gulf</u>, the exclusionary language is quite specific and does not require further interpretation of the Agreements. It is clear that those matters concerning the "Employer's liability for payment of Pension Fund contributions" are exempt from the arbitration provisions. "Where, as in this case, a subject is specifically excluded from

38

the arbitration procedure, we are not free to ignore the plain wording of the agreement between the parties." <u>Chris-Craft Corp</u>., 385 F.2d at 949-950.

The Unions also suggest that <u>Warrior & Gulf</u> dictates that because some portion of the Agreements must be interpreted, namely, the out-of-area clauses, then the entire dispute must be arbitrated.  A close reading of <u>Warrior & Gulf</u>, however, reveals that it is only when the exclusionary clause itself is vague that the interpretation of that clause is subject to arbitration. <u>Warrior & Gulf</u>, 363 U.S. at 586.  The fact that the court will have to interpret some portion of the Agreements when deciding a dispute specifically excluded from arbitration does not transform the dispute into an arbitrable one.

The Unions next argue that the exclusionary provisions give the Unions, but not TPC, the option of seeking relief in court instead of in arbitration.  However, the plain language of the Agreements withdraws that right from both parties.

The Unions also argue that the out-of area clauses in the D.C. 9 and D.C. 15 Agreements require the employer to arbitrate. The clauses state:

> The Employer hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to this Agreement, comply with all the lawful clauses of the Collective Bargaining Agreement in effect in said other geographic jurisdiction . . . including but not limited to, the wages, hours, working conditions, fringe benefits and procedures for settlement of grievances set forth therein.

Amended Complaint, Ex. A, at Article VI, § 1; <u>See</u> <u>also</u> Amended Complaint, Ex. B, at Article 4, § 1(b)(containing substantially the same language). It is a well-settled

principle of contract interpretation that, if two contractual provisions contradict each other on an issue, the provision that more specifically addresses the issue governs. B.F. Goodrich Co. v. United States Filter Corp., 245 F.3d 587, 596 (6th Cir. 2001). The out-of-area clauses, which provide generally that a grievance procedure applies to disputes regarding work outside the Unions' territorial jurisdiction, is far more general than the exclusionary clauses, which specifically state that disputes regarding TPC's liability for fund contributions are not subject to arbitration.

### D.  Motion to Transfer

#### 1.  Standard of Review Under §1404(a)

The purposes of transferring a case from one federal district to another, pursuant to 28 U.S.C. § 1404(a) where venue is proper in each, are to permit access to proof with greater ease, to allow witnesses to attend a trial, to enhance enforceability of any judgment rendered, and otherwise to permit a transfer when to do so would further the goal of a fair and efficient trial and remove any obstacles thereto. Holiday Rambler Corp. v. American Motors Corp., 254 F.Supp. 137, 139 (W.D. Mich. 1966).  A change of venue allows the Court to prevent unnecessary waste of time, energy and money and to protect witnesses and the public against unnecessary inconvenience and expense. Rowe v. Chrysler Corp., 520 F.Supp. 15, 16 (E.D. Mich. 1981).

However, when balancing those various factors, the Court does not start with the assumption that the case should

40

proceed in whichever forum is slightly more advantageous to
the parties or the witnesses. Rather, it has long been held
that the plaintiff's choice of a forum is entitled to
considerable weight, and, consequently, the party moving for
a change of venue must demonstrate that the interests served
by 28 U.S.C. § 1404(a) clearly favor a change of venue.
Central Investment Corp. v. Mutual Leasing Associates, Inc.,
523 F.Supp. 74, 79 (S.D. Ohio 1981); See also U.S. v.
Cinemark USA, Inc., 66 F.Supp.2d 881, 887-888 (N.D.Ohio
1999). Of course, although "a plaintiff's choice of forum
should be given weight when deciding whether to grant a
motion to change venue, this factor is not dispositive."
Lewis v. ACB Business Services, Inc., 135 F.3d 389, 413 (6th
Cir. 1998).

     Typically, where several fora are available in which to
try a case, some inconvenience to one or more parties will
exist no matter which forum is chosen. Consequently, if a
change of venue serves merely to shift the inconvenience from
the plaintiff to the defendant, a change of venue is
improper. Raymond E. Danto Associates, Inc. v. Arthur D.
Little, Inc., 316 F.Supp. 1350, 1358 (E.D. Mich. 1970).
Consistent with that principle, a generalized assertion by a
defendant that documents are located in the proposed
transferee district is generally insufficient to support a
change of venue. See Audi AG v. D'Amato, 341 F.Supp.2d 734,
751 (E.D. Mich. 2004). Rather, the defendant must show a
specific hardship involved with conducting discovery in the
plaintiff's chosen district. See AMF, Inc. v. Computer

41

<u>Automation, Inc.</u>, 532 F.Supp. 1335 (S.D. Ohio 1982); <u>Richards v. Upjohn Co.</u>, 406 F.Supp. 405 (E.D. Mich. 1976). The Court may also take into account other factors, including which party is more easily able to bear the hardship involved in litigating in a distant forum, <u>Garrett v. Ruth Originals Corp.</u>, 456 F.Supp. 376 (S.D. Ohio 1978), where the conduct underlying the plaintiff's claims occurred, the comparative docket congestion in the districts under consideration, and the plaintiff's connection, if any, with the proposed transferee forum.  <u>See</u> <u>Artisan Development v. Mountain States Development Corp.</u>, 402 F.Supp. 1312 (S.D. Ohio 1975). The instant motion for a change of venue will be decided with reference to these principles.

### 2.  Jurisdiction and Venue in the D.C. Action

Section 1404(a) allows a transfer for the convenience of the parties to a district court where the action "might have been brought."  This language requires a district court to first consider whether the transferee court, here, Washington, D.C., would have appropriate subject matter jurisdiction and venue, and whether defendants would be amenable to service of process in that court.  <u>Kay v. Nat'l City Mortg. Co.</u>, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2004). Because this is not an appropriate case for transfer, this court will assume, without deciding, that the case might have been brought in Washington, D.C.

### 3.  Ohio As the More Appropriate Venue

When the court considers the "convenience of the parties," this is usually expressed in terms of a number of private factors, such as: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of the unwilling witnesses and the cost of obtaining attendance of willing witnesses; and (3) other practical problems that make trial of a case easy, expeditious and inexpensive. Hanning v. New England Mut. Life Ins. Co., 710 F. Supp. 213, 214 (S.D. Ohio 1989).

This case centers around three separate Agreements. The parties to those Agreements are located in Ohio, New York, Nevada, and New Jersey. The Funds, the third-party beneficiaries of the Agreements, are located in Washington, D.C. Regardless of where the trial is ultimately held, either D.C. or Ohio, witnesses will have to travel and documents will have to be moved.  As the party moving for transfer, it is the Funds' burden to show that Washington, D.C. would be the more convenient forum. Id. at 215; AMF, Inc., 532 F.Supp. at 1348.  They have failed to sustain this burden.

Because this case centers around the breach of the Agreements which were formed in part in Ohio, the sources of proof will be much more easily accessed in Ohio. Any documents relevant to negotiations between the Union and TPC are likely to be here in Ohio or with the Unions in their respective states, but not in Washington, D.C.  Moreover, witnesses who will attest to the formation of the contract, any alleged violation, and any alleged fraud are also likely to be here in Ohio or in the Unions' respective states, not

43

in Washington, D.C.  Because the ERISA collection action is
not before this court, documents concerning TPC's alleged
delinquency in payments to the Funds which are kept in
Washington D.C. are likely not relevant.

The Funds have attempted to argue that the D.C. Action
is the more convenient forum. They have submitted affidavits
from parties to this case, individuals who work for both the
Funds and the Unions, that state those individuals would
prefer to litigate in Washington, D.C.[14] Even if this case is
transferred to Washington, D.C., however, the Union
defendants would still have to travel and be away from their
home offices, making the alleged convenience of Washington,
D.C. less persuasive.[15]  Because a change of venue would serve
to merely shift the inconvenience from the defendants to the
plaintiff, a change of venue is improper. Raymond E. Danto
Associates, Inc., 316 F.Supp. at 1358; International
Brotherhood of Painters & Allied Trades Union v. Rose Bros.
Home Decorating Center, Inc., No. 91-1699, 1992 U.S. Dist.
LEXIS 1321 (D.D.C. Jan. 14, 1992).

This court must also consider how public interest
factors weigh in considering a motion to transfer. Such
factors include: (1) congested dockets; (2) concerns with

---

[14]Here, the Funds have named only one non-party witness who
would have to travel to Ohio, the auditor for the Fund retained
through an outside agency.  If the Funds choose to keep their
ERISA collection action in D.C. as filed, it is unlikely this
witness will even be necessary in the Ohio Action.

[15]The Unions have submitted affidavits that because their
international headquarters are in D.C., that is a more convenient
forum.

resolving controversies locally; and (3) familiarity with controlling law. Hanning v. New England Mut. Life Ins. Co., 710 F. Supp. 213, 214 (S.D. Ohio 1989). No party to this dispute has alleged that the Southern District of Ohio's docket cannot accommodate this case or that the Southern District of Ohio is any more congested than the District of Columbia.

The Southern District of Ohio has an interest in deciding this local controversy. Ohio is TPC's principal place of business. The outcome of this case may well affect the viability of this Ohio company. See e.g., Hanley v. Omarc, Inc., 6 F. Supp. 2d 778, 779 (N.D. Ill. 1998) and Mincey v. Overhead Door Co., No. 93-1312, 1993 U.S. Dist. LEXIS 13678, at *10 (E.D. La. Sept. 30, 1993)(both noting the burden on small companies in particular when having to litigate in a state in which they do not transact business). The contracts were negotiated over the phone from Ohio and did not involve any negotiations in Washington, D.C. This action concerns a breach that allegedly took place in Ohio because TPC allegedly failed to pay wages for business conducted in Ohio. Because the vast majority of TPC's work takes place in Ohio, most of the alleged fund payments due concern work performed in Ohio by Ohio employees. See Mincey, 1993 U.S. Dist. LEXIS 13678, at *11 (transferring case away from funds' chosen forum and to employer's chosen forum in part because "in determining the extent of the records subject to audit, questions may arise as to the scope of

duties of . . . employees, which the employees themselves
would be best suited to address.").

The Fund Defendants point out that in ERISA actions, the
Fund's choice of forum is due substantial deference and thus,
they argue, the interest of justice weighs in favor of
transferring this case to D.C. See International Brotherhood
of Painters & Allied Trades Union v. Best Painting &
Sandblasting Co., 621 F. Supp. 906, 907 (D.D.C. 1985)(noting
Congress's express intention to permit Fund collection
actions in the place where the plan was administered). This
court recognizes that ERISA's special venue provision
reflects Congress's intention to protect the financial
integrity of pension funds by allowing these funds to bring
collection suits in their home districts. Int'l Painters v.
Tri-State Interiors, Inc., 357 F. Supp. 2d 54, 56 (D.D.C.
2004).  Despite this policy, however, this court cannot
ignore the benefit served by having this dispute decided here
in Ohio.  See Hanley, 6 F. Supp. at 777 (holding that
despite deference to the Fund's choice of forum, New Jersey
was more convenient, the defendant company was a small New
Jersey corporation, and New Jersey was closer to the action).

The District of Columbia has maintained the Fund's
choice of forum in their collection action, but has stayed
the case pending this court's resolution of the contract
language at issue in the Agreements.  Because the Funds were
not involved in the formation of the Agreements, they will
likely have little evidence to present in the Ohio Action.
Most of the Funds' evidence concerns its audit which is only

46

relevant to the D.C. collection action and will remain in D.C. Thus, while this decision may result in some piecemeal litigation, it may be a fortuitous separation of the issues and serve the convenience of both the Funds and TPC.

**IV. CONCLUSION**

For the foregoing reasons, this Court denies the Funds' Motion to Transfer (Doc. #22).  The Union's Motion to Dismiss is granted in part as to TPC's claims for fraud because they are improperly pled, and is denied in all other respects. (Doc. #20).  The Funds' Motion to Dismiss is granted in part as to the claim by TPC for this court to provide an accounting under ERISA, and is denied in all other respects (Doc. #21).  TPC's Motion to Supplement (Doc. #45) is granted.  The court hereby grants TPC leave to amend its Amended Complaint (Doc. #11) withing 20 days of the date of this order in order to more properly plead the elements of a claim for indemnification and/or contribution and to plead its claim for fraud with more specificity.

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

Date: September 30, 2008